IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Nora K. Mullen, | : | |
| Plaintiff | : | Civil Action 2:11-cv-01159 |
| v. | : | |
| John S. Compton, Esq. & Lois Compton, | : | Magistrate Judge Abel |
| | : | |
| Defendants | : | |
| | : | |

# DECISION

Plaintiff Nora K. Mullen brings this action against defendant John S. Compton, Esq.[1] for violations of the Fair Debt Collections Practices Act ("FDCPA") and the Ohio Consumer Sales Practices Act ("OCSPA"). The amended complaint alleges that defendant John S. Compton communicated with plaintiff Nora Mullen knowing she was represented by counsel in violation of 15 U.S.C. § 1692c(a)(2); falsely represented the amount due on the debt in violation of 15 U.S.C. § 1692e(2)(A); and made a threat of suit not actually intended in violation of 15 U.S.C. § 1692e(5). The amended complaint also pleads  related Ohio law claims claims under the Ohio Consumer Sales Practices Act. A bench trial was held on May 6, 2013.

---

[1] At the final pretrial conference, Compton stipulated to the fact that he was liable for any conduct on the part of Lois Compton. In return, plaintiff dismissed Ms. Compton from this lawsuit.

## I.     Findings of Fact

In March 2007, plaintiff Nora Mullen entered into a contract with Thompson Building Associates, Inc. ("Thompson Building")  to have work completed on her principal residence to repair water damage. The contract provided that $3,991.44 was due at signing and $3,991.44 due at substantial completion. It further provided that there would be a finance charge of 1.5% per month added to any unpaid balance over 30 days old. If the account was placed with an attorney for collection, Mullen agreed to pay reasonable attorney fees and costs incurred. Mullen further agreed to immediately endorse to Thompson Building any insurance payments received. The original contract amount was $7,982.88. In March 2007, Mullen paid $3,991.44 on the contract. Plaintiff's Ex. 5. On April 16, 2007, in violation of the contract, Mullen cashed a check from her insurer payable jointly to her and Thompson Building in the amount of $5,4716.73. In early July 2007, Mullen or her insurance company negotiated a credit on the contract in the amount of $1,234.43. *Id.* On July 6, 2007, Thompson Building submitted an invoice for the remaining contract amount due of $2,757.01. Plaintiff's Exh. 13.

On October 15, 2007, Ms. Celeste K. Roper, an employee of Thompson Building corresponded with plaintiff via email and indicated a balance due of $2,757.01. Plaintiff's Exh. 14. On December 12, 2007, Thompson Building wrote Mullen a letter stating "that a two-party check issued by your insurance company to yourself and Thompson Building Associates has been cashed. As of the date of this letter we show a balance still due to Thompson Building Associates of $2,757.01." Plaintiff's Exh. 15.

On July 17, 2009, Thompson Building provided documents directly to plaintiff's counsel, which included the July 6, 2007 invoice. Plaintiff's Exh. 5, at pp. 3 ff. On July 23, 2010, Reliant Capital Solutions, LLC, ("Reliant") an agent of Thompson Building, emailed documents regarding collection of the debt directly to plaintiff's counsel. Plaintiff's Ex. 5, at p. 2.

On December 30, 2010, Reliant Capital Solutions, LLC emailed Lois Compton a "litigation packet" that may have included an asset report, copy of the the insurance check Mullen cashed without Thompson Building's signature, invoices, billing statements, contract, and signature on certificate of completion. Plaintiff's Exh. 1. On January 12, 2011, John S. Compton sent Mullen a letter:

> This is to advise that the claim as above indicated [Amount Due: $5760.82] has been placed with this office for immediate collection. I have been notified that this account is now in default and that you have been offered every opportunity to pay this obligation as required by law.
>
> Further, I have been advised you have failed to respond in an appropriate matter.
>
> Your creditor [Thompson Building Associates] has authorized and instructed me to file suit against you for the amount due plus costs, interest and other amounts that may be payable by you as permitted by law.
>
> This is the final notice you will receive prior to legal action being taken against you by this office. You should be aware that not only will this result in costs which would otherwise be avoided by you if payment is promptly made and also that this may become a part of your credit record.
>
> . . .

3

**SEE REVERSE FOR NOTICE CONCERNING YOUR RIGHTS**

Plaintiff's Exh. 3. The reverse side of the letter contained the following notice:

NOTICE

We will assume this debt to be valid unless we are notified by you within 30 days after receipt of this notice regarding any dispute of this debt or any portion thereof you may have. If you notify us in writing within this 30 day period that the debt, or any portion thereof, is disputed, we will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you.

If you make a written request within this 30 day period we will provide you with the name and address of the original creditor if different from the current creditor.

We are attempting to collect a debt and any information obtained by us will be used for that purpose.

*Id.*

Nora Mullen testified that she gave birth to her daughter on January 11, 2011. When she came home from the hospital she read Compton's snarly and "growly" January 12, 2011 letter and was upset to discover that she was going to be sued. It was just she and her newborn daughter trying to figure things out. She believed that the stated $5,760.82 amount due was a crazy amount because the work was shoddy and incomplete. Mullen testified that she had kept asking Thompson Building to provide a breakdown of the work completed. She testified that receiving the letter from Compton had been very traumatic and stressful for her. She found the situation stressful and ridiculous. The January 12, 2011 letter was the one and only contact between Compton and Mullen.

4

On January 24, 2011, Richard J. Donovan wrote Compton a letter on behalf of
Mullen that:

- Disputed the debt and demanded verification.

- Asserted that the communication to Mullen violated the FDCPA and
  OCSPA because "my representation of Ms. Mullen in this matter is well
  known and has been documented" by communications between him
  and Thompson Building on October 17 and December 19, 2007 and July
  17, 2009.

- Asserted that the stated amount due of $5,760.82 "must appear
  specifically unsupported by any express authorization in the agreement
  on which Thompson would base the asserted debt." On July 6, October
  12, and December 12, 2007 and July 17, 2009, Thompson Building
  asserted the debt was $2,752.01. On July 23, 2010, Reliant Capital
  Solutions, LLC ("Reliant") sought to collect $2,752.01.

Plaintiff's Ex. 4.

Defendant John S. Compton testified that Reliant, a debt collection agency,
referred Thompson Building to him for the purpose of filing suit. It is his practice to
first send a letter to the debtor to notify the debtor that suit was going to be filed and
provide the debtor an opportunity to contest the debt. Thompson Building was his
client. After receiving Donovan's January 24, 2011 letter, Compton sought more
information from his client.

5

On January 25, 2011, Reliant sent Compton the information it had sent Donovan on July 23, 2010. Plaintiff's Ex. 5. This was the first time he saw those documents. On the same day, Reliant sent Compton a breakdown of the amount due. The email said that the total balance was $5,779.02. That included a principal balance of $2,839.73, interest of $1,419.87, and collection costs of $1,419.87. Plaintiff's Ex. 7. Still on that same day, Compton wrote Donovan providing him with the Thomas Building contract and related documents, the documents recording its attempts to collect the final payment, and the breakdown of the amount due. Plaintiff's Ex. 9.

When Donovan did not respond to the January 25 letter, Compton wrote to him again on April 20, 2011. The letter asked Donovan to contact Compton because "our client has requested we proceed with legal action if this can not be settled by a payment arrangement." Plaintiff's Ex. 11. On June 27, 2011, Reliant asked Compton for a status update on Mullen. Plaintiff's Ex. 12.

Compton had no communication directly with Thompson Building. His only contact was Reliant, Thomson Building's agent. Compton stated he never investigated whether the numbers provided by Reliant were accurate. He took his client's word for it.

II.        Discussion

I will now consider whether plaintiff has proved by a preponderance of the evidence each of the essential elements of her claims that Compton (1) communicated

6

with Mullen knowing she was represented by counsel; (2) falsely represented the

amount due on the debt; and (3) made a threat of suit not actually intended.

**Communication with represented debtor.** Section 1692c of Title 15 of the United

States Code states:

> Without the prior consent of the consumer given directly to the debt
> collector or the express permission of a court of competent jurisdiction, a
> debt collector may not communicate with a consumer in connection with
> the collection of any debt–
> . . .
> (2) if the debt collector knows the consumer is represented by an attorney
> with respect to such debt and has knowledge of, or can readily ascertain,
> such attorney's name and address, unless the attorney fails to respond
> within a reasonable period of time to a communication from the debt
> collector or unless the attorney consents to direct communication with the
> consumer. . . .

15 U.S.C. § 1692c(a)(2). Generally, courts have required that an attorney have "actual

knowledge" of the fact that a debtor is represented by counsel and have held that a

creditor's knowledge that a consumer is represented by counsel is not automatically

imputed to the debt collector. *Micare v. Foster & Garbus*, 132 F. Supp. 2d 77, 80 (N.D.

N.Y. 2001). Despite this general principle, courts have recognized that strict adherence

to the requirement of actual knowledge could permit creditors and debt collectors to

maintain practices that intentionally circumvent the purpose of the FDCPA. *Id.* at 80-81.

At trial, plaintiff failed to provide any evidence that defendant was wilfully blind

to the fact that she was represented by counsel. There is no evidence in the record that

Compton knew that she was represented. Given that the statute provides that there is a

violation only when "the debt collector knows the consumer is represented by counsel,"

I conclude that because plaintiff was required to show actual knowledge on the part of defendant, defendant is entitled to judgment on Counts one and seven.

**Falsely representing the amount of the debt due.** Section1692e(2)(A) prohibits the false representation of "the character, amount, or legal status of any debt." The FDCPA further provides:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C.A. § 1692k(c). The bona fide error defense in the FDCPA does not apply to violations of the FDCPA resulting from a debt collector's incorrect interpretation of the legal requirements of the Act. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich, LPA, et al.*. 559 U.S. 573 (2010).

Defendant's January 12 letter asserted that plaintiff owed $5,760.82 and his January 25 letter asserted that plaintiff owed $5,779.02, which consisted of a principal balance of $2,839.73, interest in the amount of $1,519.42, and collection costs of $1,419.87. Plaintiff maintains that defendant explicitly misrepresented the amount of the asserted debt. Plaintiff argues that Thompson Building had forgone interest in its previous communications to Mullen, and defendants are not permitted to change the balance due by inserting interest after the fact. Ms. Compton's January 25 letter included a statement of collection costs in the amount of $1,419.87 as part of the total

8

demand. Plaintiff maintains that Ohio law[2] prohibits the recovery of attorney's fees in the collection of consumer debts, and as a result, defendants misrepresented the amount of the debt in violation of § 1692(e)(2)(A).

Compton testified that these figures were provided to him from Thomas Building through Reliant.  Compton also testified that the collection costs do not represent his attorney fees because this accounts was accepted on a contingency basis.

Plaintiff asserts that Compton failed to conduct an independent investigation of the figure provided to him by Reliant to determine the accuracy of the amount asserted. The Sixth Circuit has held, however, that FDCPA does not require an independent investigation of the debt referred for collection. *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025, 1032 (6th Cir 1992). In *Smith*, the plaintiff owed Ryder Truck Rental, Inc. $446.21. Smith submitted $446.21 to Ryder, but Ryder inadvertently referred the account to the defendant, Transworld Systems, Inc. for collection. The referral form issued by Ryder to Transworld incorrectly stated the balance due was $456.21. At issue was the $10.00 discrepancy between the amount Smith actually owed Ryder and the amount Transworld sought to collect from him. The Sixth Circuit held that because Transworld employed procedures reasonably adapted to prevent errors in amounts

---

[2]In her motion for summary judgment, plaintiff argues that section 1301.21 of the Ohio Revised Code prohibits the recovery of attorney fees in the collection of consumer debts. Section 1301.21 was recodified as section 1319.02. Specifically, Ohio Revised Code § 1319.02(C) provides: "A commitment to pay attorneys' fees is enforceable under this section only if the total amount owed on the contract of indebtedness at the time the contract was entered into exceeds one hundred thousand dollars."

referred for collection, Transworld reasonably relied on the accuracy of the $456.21

figure and the resulting mistake was bona fide error under 15 U.S.C. § 1692(k)(c).

Despite plaintiff's assertions, under Sixth Circuit case law, defendant was not

required to perform an independent investigation of the figures provided by his client.

Compton was not required to have a breakdown of what the debt was comprised of

prior to communicating that amount to plaintiff. Compton testified that he provided the

figure given to him by Reliant.

Plaintiff's argument assumes that Compton misrepresented the amount due on

the debt, but she offers no evidence to support that assertion. An essential element of a

claim under 15 U.S.C. § 1692(e)(2)(A) is that the amount shown on the communication

attempting to collect the debt was false. *Sanchez v. United Collection Bureau, Inc.*, 649

F.Supp.2d 1374, 1380 (N.D. Ga. 2009). Plaintiff has offered no evidence from which a

trier of fact could conclude by a preponderance that Compton made a false

representation of "the character, amount, or legal status" of the debt alleged owed

Thompson Building. The fact that Thompson Building only attempted to collect

$2,757.01 does not bar it from seeking other contractual damages if it initiates suit. The

contract called for 18% per annum interest as well as reasonable attorney fees and costs

incurred if the debt was placed with an attorney for collection. Plaintiff offered no

evidence of what the interest on the alleged debt would have been as of January 2011,

nor did she offer any evidence of Thompson Building's costs incurred (other than

10

attorney fees) collecting the debt as of the time it authorized Compton to file suit on the debt. I conclude that plaintiff has failed to prove a claim under 15 U.S.C. § 1692(e)(2)(A).

**Threatening suit not actually intended.** Section 1692e of title 15 of the United States Code states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .

15 U.S.C.A. § 1692e (5). Plaintiff alleges that Compton threatened imminent legal action that he did not intend to take. Mr. Compton's January 12, 2011 letter stated, "[t]his is the final notice you will receive prior to legal action being taken against you by this office." Exhibit 3. Plaintiff's counsel responded to Mr. Compton's letter on January 24, 2011, which requested validation of the asserted debt. Exhibit 10. Ms. Compton responded to Mr. Donovan's letter on January 25, 2011. Exhibit 9. On April 20, 2011, Ms. Compton wrote a second letter to plaintiff's counsel indicating that she had received no response to her earlier letter. Exhibit 11. An April 22, 2011 email from Reliant instructed defendant to "hold off" on any further legal action.

At trial, plaintiff did not offer any evidence that defendant threatened legal action that he did not intend to take. Rather, plaintiff's exhibits demonstrate that this case was referred to defendant for the purposes of filing suit. Compton testified that

11

prior to filing a suit, his practice was to send the debtor a letter confirming the amount due and owing. He maintained that his system worked as it was intended to. When plaintiff demanded verification of the amount, he sought additional information from his client and provided it to Mullen.  There is no evidence before the Court suggesting that Compton did not intend to file suit immediately when he first sent his letter to plaintiff. As a result, Compton is entitled to judgment with respect to Counts three and nine.

**IV.**       **Conclusion**

The Clerk of Court is DIRECTED to enter JUDGMENT for defendant.

s/Mark R. Abel           
United States Magistrate Judge
